**UNITED STATES of America, Plaintiff,**

v.

**PEOPLES TEMPLE OF THE DISCIPLES OF CHRIST, et al., Defendants.**

**Misc. No. 81–0066.**

United States District Court, District of Columbia.

April 10, 1981.

Stanley M. Brand, Steven R. Ross, Washington, D. C., for petitioner.

Jeffrey L. Kestler, Washington, D. C., for respondent.

MEMORANDUM

AUBREY E. ROBINSON, Jr., District Judge.

Before the Court is the Motion of the Honorable Edmund L. Henshaw, Jr. and the Honorable Clement Zablocki to Quash a deposition subpoena in the above captioned action. The underlying facts may be thus summarized:

The merits of the instant case involve an attempt by the United States to collect from Defendants costs accrued by the United States in searching for the living and transporting the dead after the Jonestown tragedy. Investigations were conducted by both the Executive and Legislative Branches of government subsequent to the occurrence of the tragedy, and it is apparently undisputed that to some extent conflicting conclusions resulted from the different investigations. Defendants have already received unprivileged evidence underlying the investigation conducted by the Executive Branch. They now seek evidence that re-

mained unpublished[1] following completion of the Congressional investigation.[2]

Defendants seek the documents in question to facilitate the formulation of certain defenses in the instant action. They claim that the documents are relevant to such issues as (1) why the United States undertook the rescue mission, (2) whether it had any genuine intent to be paid therefore, and (3) whether it played some part, however inadvertently, in precipitating the tragedy. For the purposes of Movants' Motion to Quash, this Court assumes the relevance of the documents to the instant litigation.

Movants' Motion to Quash is premised on the Speech and Debate Clause of the Constitution, Art. I, § 6 cl. 1. That Clause states, in pertinent part, that "for any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place." Two issues present themselves here, to wit: (1) do the requested documents and testimony fall within the parameters of the Clause, and (2) if so, does the Clause preclude judicially compelled production of the documents and testimony requested.

■ A "Speech or Debate" is any action within the "sphere of legitimate legislative activity." *Eastland v. United States Serviceman's Fund*, 421 U.S. 491, 503, 95 S.Ct. 1813, 1821, 44 L.Ed.2d 324 (1975); *Gravel v. U. S.*, 408 U.S. 606, 616, 92 S.Ct. 2614, 2622, 33 L.Ed.2d 583 (1972). It is not and cannot be disputed that the investigation of Congressman Ryan's death, publication of the report, and discretionary inclusion or omission of information is within that "sphere of legitimate legislative activity." *See Doe v. McMillan*, 412 U.S. 306, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973). Thus, the sole remaining question concerns the parameters of the Speech and Debate Clause.

■ It is undisputed that the primary purposes of the Clause are (1) to preclude the possibility that a Member of Congress will become the target of civil or criminal liability while in pursuit of legitimate legislative activity and (2) to obviate the possibility of compulsive testimony by the executive branch. *Gravel v. U. S.*, 408 U.S. at 616–617, 92 S.Ct. at 2622. Defendants contend that none of these purposes would be served by granting the Motion to Quash, that the instant litigation is unique because the United States is the plaintiff, and that no hardship results to Congress should this Court enforce the subpoena.

■ Defendants misconstrue the purpose of the Speech and Debate Clause and the relevant case law. While it is true that the primary purpose of the Clause involves precluding direct hardship to the legislative branch or any of its members, a broader purpose is also served. Separation of Powers principles dictate that, once it is determined that Congress or any of its members have acted within the legitimate legislative sphere, neither the Executive Branch nor the Judiciary shall interfere with legislative discretion. As the Supreme Court stated in *Eastland*, 421 U.S. at 503, 95 S.Ct. at 1821. The applicability of the Clause to private civil actions is supported by the absoluteness of the term "shall not be questioned," and the sweep of the term "in any other Place." In reading the Clause broadly we have said that legislators acting within the sphere of legitimate legislative activity "should be protected not only from the consequences of the litigation's results but also from the burden of defending themselves . . . ." [W]hether a criminal action is instituted by the Executive Branch, or a civil action is brought by private parties, judicial power is still brought to bear on Members of Congress

---

1. The results of the Congressional investigation have been published, as have many of the bases underlying the conclusions. *See* The Assassination of Representative Leo J. Ryan in the Jonestown, Guyana Tragedy, H.R.Doc.No.96–233, 96th Cong., 1st Sess. (1979) (Investigative Report).

2. Congress was, to some extent, investigating the role of the executive branch as it related to the Jonestown tragedy. It is therefore understandable that the results of the Congressional investigation differed from the results of the investigation conducted by the Executive Branch.

and legislative independence is imperiled. *We reaffirm that once it is determined that Members are acting within the "legitimate legislative sphere" the Speech or Debate Clause is an absolute bar to interference.* (emphasis added)

The Supreme Court has rarely spoken with greater clarity. Once it is determined (as it has been in the instant case) that the Movants' actions fall within the "legitimate legislative sphere," judicial inquiry is at an end. Otherwise, Members of Congress conducting investigations would be forced to consider at every turn whether evidence received pursuant to the investigation would subsequently have to be produced in court. This would "imperil" the legislative independence protected by the Clause. Moreover, producing documents and testifying at a deposition would certainly disrupt the functioning of a Member of Congress. Movants' Motion to Quash must be granted.